UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

KENYON NOLAN,

                    Petitioner,

v.                                                          Case No:  5:14-cv-118-Oc-10PRL

SECRETARY, DEPARTMENT OF
CORRECTIONS and FLORIDA
ATTORNEY GENERAL,

                    Respondents.
_____/

## OPINION AND ORDER

        This matter comes before the Court upon a petition for habeas corpus relief filed

pursuant to 28 U.S.C. § 2254 by Kenyon Nolan ("Petitioner"), a prisoner of the Florida

Department of Corrections (Doc. 1, filed February 24, 2014).  Petitioner, proceeding *pro

se*, attacks the convictions and sentences entered against him by the Fifth Judicial Circuit

Court in Lake County, Florida for trafficking in methamphetamine, manufacture of

methamphetamine, conspiracy to manufacture methamphetamine, possession of a listed

chemical, and grand theft auto. *Id.*  Respondents filed a response to the amended petition

(Doc. 9).  Petitioner filed a reply (Doc. 11), and the case is now ripe for review.

        Petitioner raises three claims and four sub-claims in his petition.  For clarity, the

Court will number and address each claim separately.  Petitioner asserts that: (1) defense

counsel ("Counsel") was ineffective for failing to present video evidence at the

suppression hearing; (2) Counsel was ineffective for failing to call witnesses at the

suppression hearing; (3) the transcript of the suppression hearing is incorrect; (4) Counsel

was ineffective for failing to impeach Detective Reed with his prior inconsistent testimony;

(5) Counsel was ineffective for failing to seek suppression of the methamphetamine seized from his residence on the basis of an unreliable chain of custody; (6) Counsel was ineffective for failing to object to a vindictive sentence; and (7) Counsel's cumulative errors resulted in the denial of his suppression motion (Doc. 1 at 3-7).

Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be dismissed or denied.  Because the petition may be resolved on the basis of the record, an evidentiary hearing is not warranted.  *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

### I.      Background and Procedural History[1]

On February 9, 2009, Petitioner pleaded guilty to the manufacture of methamphetamine, in violation of Florida Statutes §§ 893.13(1)(a)(1) and 893.03(2)(c)(4), possession of a listed chemical, in violation of Florida Statute § 893.149, and grand theft (App. A at 6, 17-20).  He was sentenced to three years of drug offender probation. *Id.* at 23.

On April 22, 2009, the State of Florida issued an affidavit for violation of probation charging *inter alia* that Petitioner had failed to live and remain at liberty without violating the law (App. A at 35).  Specifically, the affidavit attested that Petitioner was involved in manufacturing methamphetamine, possessed a controlled substance without a prescription, trafficked in more than 400 grams of methamphetamine, and possessed

---

[1] Citations to appendices are to those filed by Respondents on September 4, 2014 (Doc. 10). References to the VOP hearing transcript, located in Appendix C, will be cited as (VOP at __).   References to the suppression hearing transcript, located in Appendix B, will be cited as (SH at __).

chemicals to manufacture methamphetamine. *Id.*  On May 13, 2009, based upon the same behavior, Petitioner was charged by information with trafficking in over 200 grams of methamphetamine, in violation of Florida Statute §§ 893.135(1)(f) and 893.03(2)(c) (count one), manufacture of methamphetamine, in violation of Florida Statute §§ 893.13(1)(a)(1) and 893.03(2)(c)(4) (count two), conspiracy to manufacture methamphetamine, in violation of Florida Statute §§ 893.13(1)(a)(1), 893.03(2)(c)(4) and 777.04(3) (count three), and possession of a listed chemical, in violation of Florida Statute § 893.149 (count four). *Id.* at 96-97.

On July 31, 2009, Petitioner filed a motion to suppress the evidence of the drug-making apparatus taken from Petitioner's home on the basis that the apparatus was not in plain sight as the police alleged (App. A at 50).  After conducting a suppression hearing (App. B), the trial court denied the motion to suppress. *Id.* at 117-22.

On October 20 and 29, 2009, a violation of probation ("VOP") hearing was held (App. C).  After the hearing, the trial court sentenced Petitioner to a total of twenty years in prison. *Id.* at 164.  On October 29, 2009, Petitioner pleaded guilty to the new charges, and received a total of fifteen years in prison, to be served concurrently with his previous sentence (App. A at 128).

Petitioner appealed the denial of his motion to suppress (App. D).  A *per curiam* affirmance was entered (App. F), and Petitioner then filed a state habeas petition alleging ineffective assistance of appellate counsel (App. G).  Florida's Fifth District Court of Appeal denied the petition (App. I). Thereafter, Petitioner filed a motion pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") (App. J).  The post-conviction court denied the motion (App. M).  Florida's Fifth District Court of Appeal

affirmed in all respects except for the alleged failure of Counsel to communicate a plea offer from the state (App. P). The case was remanded for an evidentiary hearing. *Id.* On December 28, 2012, an evidentiary hearing was held on this issue, after which the claim was denied on the ground that no plea offer had been made (App. Q on 117-27). Florida's Fifth District Court of Appeal *per curiam* affirmed (App. T).

Petitioner filed the instant petition on February 24, 2014 (Doc. 1).

## II.   Governing Legal Principles

### A.   Standard of Review

Pursuant to 28 U.S.C. §§ 2254(d)(1) and (2), federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This standard is both mandatory and difficult to meet. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Notably, a state court's violation of <u>state</u> law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. *White*, 134 S. Ct. at 1702; *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).   That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. *White*, 134 S. Ct. at 1706 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 28 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from

[Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406).  The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)).  Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles*, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1*); Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding") (dictum); *Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013) (same).

### B.    Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984).  A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.*  This is a

"doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 563 U.S. 170 (2011)).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89. In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

## C.      Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law.  Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.  *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998).

In addition, a federal habeas court is precluded from considering claims that are not exhausted and would clearly be barred if returned to state court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman*, 501 U.S. at 750.  If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

A petitioner can avoid the application of procedural default by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. *Spencer v. Sec' y, Dep't of Corr.*, 609 F.3d 1170, 1179–80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999); *Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate there is a reasonable probability the outcome of the proceeding would have been different. *Crawford v. Head*, 311 F.3d 1288, 1327–28 (11th Cir. 2002).

A second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "To be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

### III.   Analysis

The first portion of the instant habeas petition involves Petitioner's dissatisfaction with the outcome of his motion to suppress the evidence seized at his home (Doc. 1 at 4). Specifically, he argues that Counsel's various failures rendered him (Petitioner) unable to fully and fairly present his Fourth Amendment violation claim to the state courts.

*Id.* at 5.   The factual allegations surrounding Petitioner's motion to suppress evidence were summarized in Petitioner's brief on direct appeal:

> Nolan filed a motion to suppress evidence on the grounds that the search was illegal and in violation of the Fourth Amendment to the U.S. Constitution, and an evidentiary hearing was held on July 23, 2009.   Detective William Reed was previously involved in detecting a meth lab at Nolan's residence in December 2008, and received a dispatch from an anonymous caller reporting manufacture of methamphetamine at a house on Jewell Drive, where Nolan lives.   He drove around the area, then received a second call that Nolan and a female [were] in the area in a red truck.   The red truck was seen driving toward the residence, and subsequently parked in the rear of the property.
>
> Reed called for back-up, due to the fact that during Nolan's arrest in December, Nolan fled the rear of his residence.   Detectives Brian Forst, Thomas Willis, and Kevin Bilches entered the property from a dirt road through a vacant field next to the property.   Detective Forst claimed they did not drive or walk through any hedges, trees or a fence, and parked just behind Vanessa Leglise's red truck at the rear of the house.   The state inquired of the detective, "And how much farther did you drive into the residence before you stopped?" which the detective responded, "maybe ten yards." A video of the residence and the driveway was played for the court[.]   The officers claimed that from their vehicle, they observed coffee filters, salt, and a "head jar" on the back porch.   They also observed a duffel bag on the ground containing funnels and tubing.
>
> Detective Reed and two other detectives pulled in the front driveway and walked up to the front of the house where they made contact with Nolan and Vanessa Leglise outside.   Reed advised Nolan they received an anonymous tip of a meth lab on the property and asked to look around.   Detectives Willis and Forst walked up front from the rear and advised they found a meth lab on the back porch, and Nolan and Leglise were arrested.   Detective Rodriguez wrote up a search warrant, and the house was searched.
>
> . . .
>
> The court denied the defendant's motion to suppress, and found the detectives went to conduct a "knock and talk," and

> additional detectives took a dirt road driveway on the vacant lot next door which led to the rear of the residence. Those detectives stated they could see "meth paraphernalia" as they came around the residence. The order stated there was no testimony that the officers who went around the back of the residence were on the Defendant's property, and the court ruled they did not violate Nolan's Fourth Amendment rights.

(App. D at 2-5) (footnotes and citations to the record omitted).

To the extent Petitioner claims that the state court erred by denying his motion to suppress evidence seized from his property, the Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). "Full and fair consideration" in the context of Fourth Amendment claims includes "at least one evidentiary hearing in a trial court and the availability of meaningful appellate review when there are facts in dispute, and full consideration by an appellate court when the facts are not in dispute." *Bradley v. Nagle*, 212 F.3d 559, 564–65 (11th Cir. 2000) (quoting *Caver v. Alabama*, 577 F.2d 1188, 1191 (5th Cir. 1978)).[2]

The record indicates that Petitioner filed a motion to suppress prior to trial (App. A at 50). After an evidentiary hearing (App. B), the trial court denied the motion on the merits (App. A at 117). At the hearing, Petitioner presented evidence, arguments were heard, and a ruling on the merits was made. Subsequently, the denial of his motion to suppress was fully litigated as an issue on direct appeal (App. D; App. E; App. G).

---

[2] The Eleventh Circuit has adopted the decisions of the Fifth Circuit decided prior to September 30, 1981, as binding precedent. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Petitioner does not contend that he was denied the opportunity to present facts to the trial court or to argue the issue before an appellate court.  He did both.  Rather, he argues that the hearing was not full and fair due to Counsel's ineffectiveness and fraud that occurred subsequent to the hearing.  Accordingly, although this Court is precluded from reviewing a Fourth Amendment claim pursuant to *Stone*, each of Petitioner's Sixth Amendment sub-claims will be addressed separately. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (holding that *Stone* does not preclude review of an ineffective assistance claim based upon defense counsel's failures in a suppression hearing).

## A.    Claim One

Petitioner asserts that Counsel was ineffective for failing to show the police crime scene and search warrant execution videos during the suppression hearing (Doc. 1 at 5).[3]  Petitioner alleges that, although Counsel played his own video of the scene for the Court, the police department's crime scene video would have "shown the alleged contraband as it was when officers arrived at Petitioner's home, the position of the contraband and vehicles parked in Petitioner's yard would have shown the court that, despite the L.E.O. testimony, said contraband was not visible from the vantage point of the adjacent vacant lot." *Id.* at 6.

---

[3] Petitioner asserts that the search warrant video would have shown that law enforcement searched his residence prior to the issuance of the search warrant (Doc. 1 at 7).  Petitioner did not raise in his Rule 3.850 motion the issue of Counsel's failure to play the search warrant video at the suppression hearing (App. J).  Accordingly, this portion of Claim One is unexhausted.  To the extent Petitioner argues that this Court should consider this portion of Claim One under the equitable exception set forth in *Martinez v. Ryan*, *see* discussion *infra* Claim Five, the claim is not substantial.  The validity of the search warrant was not raised in the motion to suppress – to the contrary, Petitioner admitted in the motion that prior to the search, a search warrant was obtained as a result of the items observed outside of Petitioner's residence (App. A at 50-52).  Accordingly, Counsel would have had no reason to show the search warrant video at the suppression hearing.  This portion of Claim One is unexhausted and will not be further considered by the Court.

Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court denied it on the ground that Counsel had made a reasonable decision to make his own video instead of using the police tapes:

> Defendant asserts that counsel was ineffective for failing to play a C.S.I. video of the crime scene. Defendant asserts that the video would have shown a truck obstructing the police from being able to see a pickle jar containing cooking methamphetamine and other paraphernalia from where they testified they were positioned.
>
> A video, prepared by Defendant's counsel, was shown at the suppression hearing which clearly showed the layout of the property. Therefore, it cannot be said that counsel was deficient for not showing the C.S.I. video, when he clearly showed a video with the same content. Furthermore, Detective Brian Forst testified that the truck to which Defendant is referring to was visible from the vacant lot in which they were positioned and not only did not obstruct the view of the "head jar," but actually had visible items used to make methamphetamine on the hood. Therefore, based on the testimony of the detectives involved, it is likely that showing a video made by the agency conducting the investigation against Defendant would have hindered the motion to suppress. Therefore, defense counsel took the initiative to have his own video made of Defendant's property, which was shown at hearing, to question the legality of the location of the officers and ability of the officers to view the contraband as testified to. Therefore, Defendant cannot show either deficiency or prejudice for failure to show the C.S.I. video. Because Defendant cannot meet his burden under *Strickland*, ground one must be denied.

(App. M at 4) (internal citations to the record omitted). The post-conviction court's denial of this claim was affirmed by Florida's Fifth District Court of Appeal (App. F). Petitioner does not explain how the state courts' conclusions were contrary to *Strickland* or based upon an unreasonable determination of the facts. Moreover, this Court's own review of the evidence supports a conclusion that Counsel was not constitutionally inadequate for failing to ensure the trial court viewed the police crime scene video.

At the suppression hearing, the state presented the testimony of Officers William Reed, Brian Forst, and Thomas Willis.  Officer Reed testified that he went to Petitioner's home to speak with him after receiving an anonymous tip that Petitioner was manufacturing methamphetamine (SH at 7-8, 11).  Officers Forst and Willis went to watch the back of Petitioner's home because Petitioner had fled on a prior occasion when he was arrested for manufacturing methamphetamines. *Id.* at 11.  Officer Forst testified that he and Officer Willis drove up a driveway adjacent to Petitioner's driveway and parked behind Petitioner's pick-up truck. *Id.* at 24.  He could see drug-making paraphernalia from his vantage point:

> And at that time we – when we were pulling up between the trees, you could see different items used for cooking methamphetamine on the hood of his truck and that had fallen off on the ground.  And on the back porch of the residence, you could see a head jar, which is slang or common terminology for a put use, the main cooking apparatus for meth.
>
> . . .
>
> There was the sea salt, the rubbing alcohol.  There was a canister of Coleman fuel, a Red Devil lot – or some kind of a crystal drain opener, tubing, the funnels.  There was a large – a large amount of cotton balls, I believe, that was laying there.  The truck was about maybe five to ten yards away from the rear of the residence.
>
> . . .
>
> Before I even got out of the truck, we could see the stuff on the truck, and you could see the jar on the – there was sheets of drywall on some saw horses on the back porch, and you could see that one gallon size jar sitting there, along with the funnels, the tubing, and the bottles on the hood of the truck.
>
> Some of the wider stuff, like funnels – the filters, had fallen off on the ground next to the truck.  You could see that. 'Cause there was – when we came in, we came in long or deep – I don't know how you'd describe it – we came in far, so we could turn around and get around the hedges and everything, and you could look.  It was a straight path.

14

*Id.* at 24-29.   On cross-examination, Counsel played his own videotape of the scene to the court, and challenged Officer Forst's ability to identify a head jar from the distances to which he testified. *Id.* at 31, 45-48.  Officer Willis' testimony was similar to that of Officer Forst. *Id.* at 51-53.

After the hearing, the state court issued a written order finding that the officers did not violate Petitioner's Fourth Amendment right against illegal search and seizure because they viewed his drug-making apparatus from the vacant lot next to his home and "[t]he Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares." (App. A at 120-21) (citing *California v. Ciraolo*, 476 U.S. 207, 213 (1986)). Petitioner's failure to provide this Court with any evidence to rebut the state court's factual findings means that he can satisfy neither *Strickland* ineffectiveness prong on this claim. First, Petitioner cannot demonstrate *Strickland* prejudice because he presents no proof, other than his own self-serving speculation, that the police crime scene video would have shown that the officers could not have viewed his drug-making apparatus from their vantage point off Petitioner's property.[4]   To the contrary, common sense dictates a conclusion that it would have been a waste of police resources for the officers to make a crime scene video that did *not* show the drug-making apparatus at issue; police would have had no reason to videotape in areas where nothing relating to the crime could be seen.  Next, because the video would have undoubtedly focused upon Petitioner's drug-

---

[4] In his reply, Petitioner argues that this burden "is impossible to meet" because nobody has actually viewed the CSI video (Doc. 11 at 6).  If this assertion is true, then Claim One is based solely on Petitioner's speculation—which is insufficient to support a claim of ineffective assistance of counsel. *See Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985) (speculation insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation).

making paraphernalia, reasonable counsel could have decided against showing a video to the judge highlighting his client's criminal activity. *Harrington*, 562 U.S. at 108 ("An attorney need not pursue and investigation that would be fruitless, much less one that might be harmful to the defense."). Therefore, Petitioner cannot satisfy *Strickland*'s performance prong. Petitioner is not entitled to federal habeas relief on Claim One.

## B.    Claim Two

Petitioner asserts that Counsel was ineffective for failing to call him and his father as witnesses at the suppression hearing (Doc. 1 at 7-8). Petitioner raised these claims in his Rule 3.850 motion, and the post-conviction court denied them as follows:

> Defendant asserts that had [Petitioner's father] been called at [the] suppression hearing, he would have testified that the "second driveway" detectives testified to having used did not exist and that the contraband could not have been seen from where the detectives claimed to have been positioned.

> As the State asserts in their response, Mr. Nolan was not present at the time of Defendant's arrest. Therefore, he would have been unable to testify to what was clearly visible at that time. Also, as discussed at length above, several detectives testified that the contraband was clearly visible from a vacant lot abutting Defendant's property. After hearing the testimony of the detectives and viewing a video of the location, the Court made a determination as fact finder as to the credibility of the detectives. As such, Defendant cannot show that calling Mr. Nolan to testify would have changed the outcome of the suppression hearing or that failing to do so rendered the result of the proceeding unreliable. Because Defendant cannot meet his burden under *Strickland*, [this claim] must be denied.
>                                              . . .

> In ground three, Defendant claims that counsel was ineffective for failing to call him as a witness at [the] suppression hearing. Similar to the ground above, Defendant states that he would have testified that the officers could not have seen the "head jar" from the adjacent lot. This analysis is substantially the same as the analysis in ground two. Several detectives testified that the contraband was clearly visible from a vacant lot abutting Defendant's property. After

hearing the testimony of the detectives and viewing a video of the location, the Court made a determination as fact finder as to the credibility of the detectives.  As such, Defendant cannot show that his testimony would have changed the outcome of the suppression hearing or that failing to testify rendered the result of the proceeding unreliable.  Furthermore, since Defendant still had substantive charges pending in this case, as well as violation charges pending in the two prior cases, it is likely that anything he testified to at suppression hearing would have opened him to cross examination by the State. That testimony could have been used against him in later proceedings.  Therefore, Defendant cannot prove either deficiency or prejudice.  Because Defendant cannot meet his burden under *Strickland*, [this claim] must be denied.

(App. M) (internal citations to the record omitted).  Florida's Fifth District Court of Appeal *per curiam* affirmed (App. P). [5]

The state court's conclusion that Petitioner's suppression hearing testimony could have been damaging at his upcoming trial was correct.  Although Petitioner's suppression hearing testimony could not be admitted against him at trial on the issue of guilt, *see Simmons v. United States*, 390 U.S. 377, 976 (1968), it could be used to impeach him if he testified at trial.  Moreover, given Petitioner's motivation to frame his testimony in a favorable light, his self-serving statements would have had limited credibility with the court.  Accordingly, reasonable counsel could have decided that calling Petitioner as a

---

[5] Petitioner did not specifically brief the post-conviction court's rejection of his claim that Counsel was ineffective for failing to call him (Petitioner) as a witness at the suppression hearing. Respondents assert that Petitioner's failure to brief this claim in his direct appeal brief renders it unexhausted (Doc. 9 at 8). The Court questions this assertion because Petitioner did not receive an evidentiary hearing on this particular portion of his Rule 3.850 motion.  *See Cortes v. Gladish*, 216 F. App'x 897, 899-900 (11th Cir. 2007) (recognizing that when a petitioner receives an evidentiary hearing on his Rule 3.850 motion, his failure to address issues in his appellate brief constitutes a waiver of those claims).  However, because it is easier to address this claim on the merits than to consider the claim's exhaustion status, the Court will not consider whether Petitioner sufficiently exhausted this claim. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

witness at the suppression hearing was not worth the risk that doing so could be damaging to Petitioner in his upcoming criminal proceedings.

Simmons would not preclude the use of Petitioner's father's testimony at trial or at the VOP hearing to prove that Petitioner was in the business of making methamphetamines at the time he was arrested. Moreover, Petitioner has not provided the Court with a sworn statement from his father detailing the substance of his testimony. Consequently, the claim is too speculative to warrant relief. *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petition.' ") (quoting *Aldrich*, 777 F.2d at 636); *see also United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony or by the witness by affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.").

The state courts' adjudication of the issues raised in Claim Two was neither contrary to, nor an unreasonable application of *Strickland*. Nor was the adjudication based upon an unreasonable determination of the facts. Claim Two is denied. 28 U.S.C. § 2254(d).

## C.   Claim Three

In Claim Three Petitioner asserts that "missing or altered transcripts prevented a fair appellate proceeding concerning the denial of the suppression motion." (Doc. 1 at 8). Petitioner makes the incredible assertion that the testimony on pages 30-45 of the July 23, 2009 suppression hearing transcript "simply did not occur at that hearing." (Doc. 1 at

18

8).[6]    He asserts that instead, law enforcement actually testified that the drug-making apparatus "was not visible from the adjacent vacant lot and that law enforcement was required to enter Petitioner's property and did so where upon they viewed what they believed to be contraband." *Id.* at 9.   He claims that the record of the hearing was fraudulently altered, presumably so that the appellate court would not grant relief on his appeal of the trial court's denial of the suppression motion. *Id.*

There is no indication that this claim has been raised in state court, and it is, therefore, subject to dismissal as unexhausted.  Petitioner has not presented new, reliable evidence indicating that the actual innocence exception would apply to excuse his default of this claim.   Moreover, the assertion that somebody was able to seamlessly alter the transcript of the suppression hearing to delete testimony favorable to Petitioner's instant petition is improbable.   The trial court issued a written order on Petitioner's motion to suppress less than two weeks after the suppression hearing (App. A at 115-21).   In that order, the trial court specifically found that the officers who went to the back of Petitioner's residence did not violate his Fourth Amendment rights.  The court noted:

> **There was absolutely no testimony that the officers were on the Defendant's property.**   The "head jar" and drug-making accessories were lying in clear view of the officer's positions.

(App. A at 121) (emphasis added).   The trial court's factual conclusion that there was "absolutely" no testimony that the officers were on Petitioner's property when they spotted his drug-making apparatus is a factual finding entitled to a presumption of correctness. 28 U.S.C. § 2254(e).  Petitioner has not rebutted that presumption; his instant assertion

---

[6] Pages 30-45 of the suppression hearing transcript encompass the portion of Counsel's cross examination of Officer Forst in which Counsel's videotape of the scene is played and Forst explains where he and the other officers were during the relevant time period (SH at 30-45).

that the trial court, the prosecution, the police, and presumably Counsel conspired to substitute fifteen pages of a hearing transcript with unfavorable testimony from a completely different hearing in the hope of interfering with Petitioner's direct appeal is too far-fetched a conclusion for this Court to reach.  In addition to being unexhausted, Claim Three is denied as meritless.

### D.    Claim Four

Petitioner asserts that Counsel was ineffective for failing to impeach Detective Reed at the suppression hearing with his prior testimony "that the detectives had to enter onto Petitioner's property approximately ten (10) yards before being able to view ANY contraband due to a vehicle blocking their line of sight." (Doc. 1 at 9) (emphasis in original).[7]  He claims that Officer Reed's testimony at the suppression hearing "differed greatly [than] that of his prior testimony." *Id.* at 10.

Petitioner raised this claim in his Rule 3.850 motion, and the trial court denied it on the ground that Detective Reed's alleged prior testimony simply did not exist:

> In ground five, Defendant asserts that Detective Reed proffered testimony at a "pre-trial court appearance" that detectives entered ten (10) yards onto Defendant's property before viewing the contraband due to a vehicle blocking the line of sight.  Defendant asserts that counsel was ineffective for failing to impeach the testimony offered at hearing with the allegedly previously proffered testimony.  In his reply to State's response, Defendant asserts that this testimony was given at a pretrial status conference prior to the suppression hearing.  The Court has performed a thorough review of the record and has found no testimony by Detective Reed other than the testimony offered under oath at the suppression

---

[7] Petitioner raised a variation of this claim in his state habeas petition in which he asserted that Officer Reed had testified at a June 30, 2009 pre-trial hearing about the unlawful intrusion on Petitioner's property and that appellate counsel was ineffective for failing to get a copy of the transcript to use on direct appeal – even after Petitioner ordered him to do so (App. G at 4).  In response, the state noted that court had not been in session on June 30, 2009 (App. H at 2).  The state also noted that appellate counsel had filed a successful motion to supplement the record, and "there is no reason that said transcript would not have been included in the motion – unless it did not exist." *Id.*

> hearing and at the violation of probation hearing. Furthermore, no pretrial status conference was held, nor any other conference where testimony would have been proffered prior to the suppression hearing.

(App. M at 7).   The post-conviction court's denial of this claim was affirmed by Florida's Fifth District Court of Appeal (App. F).

Petitioner offers nothing to rebut the state courts' conclusion that Detective Reed never proffered sworn pre-suppression hearing testimony regarding the other officers' placement on Petitioner's property.   Specifically, Petitioner has not provided a date for the alleged sworn testimony of Detective Reed or presented the testimony of Detective Reed in a sworn affidavit.   *See Johnson*, 256 F.3d at 1187; *Ashimi*, 932 F.2d 643, 650. Finally, Petitioner does not even identify the portion of Detective Reed's testimony Counsel should have impeached. Detective Reed did not testify at the suppression hearing that he went to the back of Petitioner's home with the other officers or that these officers spotted Petitioner's contraband prior to entering his property -- to the contrary, Reed testified that he spoke with Petitioner at the front of the residence, and did not know whether the other officers entered Petitioner's property prior to spotting the drug-making apparatus (SH at 6-20).[8]

The state court's denial of this claim was neither contrary to *Strickland* nor based upon an unreasonable determination of the facts.   Claim Four is denied.

### E.      Claim Five

---

[8] Officer Forst testified at the July 23, 2009 suppression hearing that he drove "maybe ten yards" towards Petitioner's property from the driveway adjacent to Petitioner's home (SH at 27).  A review of the allegations in Claims Three and Four of the instant petition supports a conclusion that Petitioner is conflating (or confusing) the testimony of Officer Reed with that of Officer Forst.  Even if this conclusion is correct, it does not alter the Court's analysis; there is no inconsistency in either Officers' testimony, and it is axiomatic that Officer Reed could not be "impeached" with Officer Forst's testimony (or vice versa).

Petitioner raises for the first time a claim that Counsel was ineffective for failing to argue a "chain of custody" issue based on two separate weights of the drugs he manufactured (Doc. 1 at 12-13).  Petitioner notes that on May 12, 2009, David Murarin submitted a report showing a total weight of the substances seized from Petitioner's residence of 403.1 grams. *Id.* at 12-13.  On October 23, 2009, a second report was issued by Jeffrey Gayer, listing the total weight of the substances as 384.5 grams. *Id.* at 13. Petitioner asserts that, "[a]t no point during the violation hearing did trial counsel make mention of the two reports and the obvious difference in weights.  Nor did counsel advise the Petitioner of the second report and discrepancy in weight." *Id.* at 13.  Petitioner argues that trial counsel should have challenged the chain of custody and moved for exclusion of the evidence based upon the variance in the weights of the samples. *Id.*

Respondent argues that this claim should be dismissed as unexhausted due to Petitioner's failure to raise it in state court (Doc. 9 at 5-6).  Petitioner admits that he did not exhaust this claim in the state courts, but urges that his failure to do so is excused by the Supreme Court's decision in *Martinez v. Ryan* (Doc. 1 at 6).[9]  Upon review of the record, the Court finds that this claim is unexhausted because it is not "substantial" and does not fall within *Martinez*' equitable exception to the procedural bar.

---

[9] In *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) the United State Supreme Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 1320.  Under *Martinez*, a petitioner still must establish that his underlying ineffective assistance claim is "substantial" -- that is, that it has "some merit" before the procedural default can be excused.  *Martinez*, 132 S. Ct. at 1318-19.

On October 21, 2009, the state court ordered that the substances taken from Petitioner's home by law enforcement be retested because "the chemical analyst who had previously completed testing on the evidence is no longer available for court." (Ex. A at 125). Florida Department of Law Enforcement chemist Jeffery Allen Gayer retested the samples and testified at Petitioner's VOP hearing about the procedures used to do so (VOP at 106-118). Gayer testified that the first bottle of substance, Q14A, contained "approximately one hundred and ninety-seven milliliters. Q14B had approximately two hundred and four milliliters. And Q14C had approximately one hundred and forty-nine milliliters." *Id.* at 107. Gayer then testified that he had taken a small amount of each sample to mix with water to determine "whether or not it was a solvent versus an aqueous type of sample." *Id.* He testified that he used "somewhere in the neighborhood of about ten drops for the pH, and determination of whether or not it's a solvent or not." *Id.* at 108. He testified that he then took about .7 millimeters[10] from each of the vials and tested those samples on a mass spectrometer and a gas chromatograph. *Id.* at 109-10.

It is reasonable to assume that David Murarin used a similar testing procedure as Gayer. Because a significant amount of the substance was used in testing its composition, a small decrease in the samples' weights between the first test and the second test would be expected—in fact, given Gayers' testimony regarding the testing procedures, it would have been impossible for the weights to be identical. In the absence of any evidence of tampering, reasonable counsel could have decided against raising a "chain of custody" issue at the VOP hearing. Petitioner has not satisfied *Strickland*'s

---

[10] Because Gayer referred to the samples both by weight (grams) and volume (milliliters) it is unclear whether his reference to "millimeters" (which is a measure of distance) was deliberate, or if he meant to say "milliliters."

performance prong on this claim. Therefore, the claim is not "substantial" so as to excuse Petitioner's failure to exhaust it in state court. *Martinez*, 132 S. Ct. at 1318-20.   Nor has Petitioner presented new, reliable evidence indicating that the actual innocence exception would apply to excuse his default of this claim.   Accordingly, Claim Five is dismissed.

## F.   Claim Six

Petitioner asserts that trial counsel was ineffective for failing to object "to unconstitutional sentence where the judge based the sentence in part of [sic] Defendant's refusal to admit a violation of probation and because the court felt Defendant presented perjured testimony." (Doc. 1 at 15).  Specifically, Petitioner argues:

> Because the trial Judge's comments during sentencing reflect both punishment for not admitting the violation and because the court felt that the Petitioner's defense was unbelievable, trial counsel should have objected to the sentencing or ultimately filed a motion to correct [an] illegal sentence pursuant to Fla. R. Crim. P. 3.800(b)(2).  Instead, counsel left the Petitioner to suffer an illegal and impermissible sentence in violation of Petitioner's constitutional rights.

(Doc. 1 at 18).  Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court denied the claim as completely refuted by the record:

> In ground six, Defendant asserts that at sentencing on the violation of probation, the Court based Defendant's sentence on the failure of Defendant to admit his violation and for presenting perjured testimony.   Defendant states this is "impermissible" and that counsel was ineffective for failing to object to the sentence or failing to file a motion to correct illegal sentence.  Defendant claims that the Court in stating, "So instead of just biting the bullet and sitting here quietly and letting them prove the case or instead of acknowledging the violation of probation we've – I've heard what I believe to be perjured testimony" amounts to impermissible punishing Defendant's choice to have a hearing on the violation.

> The record clearly refutes Defendant's claims.   First Defendant was facing a possible sentence of one hundred (100) years, the State was seeking a sentence of twenty-five

(25) years, but the Court sentenced Defendant to only twenty (20) years total.  The Court based Defendant's sentence on many factors, none of which was the decision of Defendant to have a hearing.  The court based the sentence on: (1) Defendant being arrested within five months of an arrest on the same charges; (2) the large amount of methamphetamine involved; and (3) perjured testimony by [a] defense witness. As such, Defendant's conclusory allegation that his sentence is illegal is clearly refuted from the record and therefore it cannot be said that counsel was ineffective for failing to object. As such, Defendant cannot meet his burden under *Strickland* and ground six must be denied.

(App. M at 7-8) (internal citation to the record omitted).  Florida's Fifth District Court of Appeal affirmed the denial of this claim.  A review of the record supports the state courts' conclusions.

During Petitioner's VOP hearing, one of his friends, Ronald Walker, testified that Petitioner was at his house "for a few hours" on the morning Petitioner was accused of making methamphetamines (VOP at 129).  He testified that he drove Petitioner back home in the early afternoon where he spotted Petitioner's girlfriend cooking the methamphetamines. *Id.* at 131. The police arrived at Petitioner's home shortly thereafter. *Id.*  In response, the state played surveillance videotapes from Winn Dixie, Walgreens, and CVS pharmacy showing Petitioner purchasing items used to manufacture methamphetamine at the times Walker testified that Petitioner was helping him repair his go-cart. *Id.* at 145-57.  In addition, Petitioner's girlfriend testified that on the morning of the arrest, she and Petitioner had visited CVS, Winn-Dixie and Walgreens to purchase the items necessary for the manufacture of methamphetamine. *Id.* at 57.  The state also presented the testimony of Officer Kevin Bilches who testified that, immediately after his arrest, Petitioner admitted cooking methamphetamine and stated that it was the first time he had done so since his last arrest. *Id.* at 22.  Given the evidence that Petitioner was not

with Walker at the relevant times, the VOP court reasonably concluded that Petitioner knowingly presented perjured testimony when Walker testified.   The Court found Petitioner guilty of the violation of probation and sentenced him to twenty years in the Department of Corrections.  The court explained its reasons for the sentence:

> I do that for a couple of reasons.  As Mr. Olson has pointed out, you got arrested within about five or six months doing exactly the same thing.
>
> This is not a small-time operation.  I heard testimony about almost four hundred grams of methamphetamine.   That coupled with the fact that I believe you got Mr. Walker involved in this, and Mr. Walker came in here and perjured himself today, because whether you argue otherwise or not, Mr. Nolan, in my view, that was you on that video, and this deal about this odyssey go-kart was something that you and Mr. Walker cooked up.
>
> But – so instead of just biting the bullet and sitting here quietly and letting them prove the case or instead of acknowledging the violation of probation, we've I've heard what I believe to be fabricated testimony.
>
> For that reason, I impose the sentence.

(VOP at 164-65).    In determining whether a sentence is vindictive, courts look at the totality of the circumstances. *Wilson v. State*, 845 So.2d 142, 156 (Fla. 2003).   Upon review of the entire VOP transcript, no indication of vindictiveness is apparent.  Petitioner was sentenced to a prison term five years <u>less</u> than that asked for by the state and far less than the 100 year maximum sentence he could have received. *See Nusspickel v. State*, 966 So. 2d 441, 444 (Fla. 2d DCA 2007) ("Generally, the trial court's imposition of a sentence that is within the minimum and maximum limits set by the legislature is a matter for the trial Court in the exercise of its discretion, which cannot be inquired into upon the appellate level.") (internal quotation omitted).  The sentencing court did not state, nor even insinuate, that Petitioner was being punished for having the VOP hearing –

accordingly, Counsel had no ground on which to object.  Although Petitioner had the right to offer a defense as he did, he did not have a constitutional right to offer perjured testimony, and reasonable competent counsel could have concluded that the sentencing court's consideration of the perjury did not result in a vindictive sentence. *See Dowling v. State*, 829 So. 2d 368, 371 (Fla. 4th DCA 2002) ("[I]t is not a violation of a defendant's constitutional rights to consider other factors when determining an appropriate sentence.") (citing *Roberts v. United States*, 445 U.S. 552 (1980)).

Petitioner has not satisfied *Strickland*'s performance prong.  Accordingly, this claim is denied. 28 U.S.C. § 2254(d).

## G.    Cumulative Error

Although not raised as a separate claim, in his summation of the first four claims of ineffective assistance of counsel, Petitioner asserts that "absent counsel's single or cumulative errors here, the outcome of his suppression hearing would have been different." (Doc. 1 at 10).  This Court need not determine whether, under current Supreme Court precedent, cumulative error claims can ever succeed in showing that the state court's adjudication on the merits was contrary to or an unreasonable application of clearly established federal law.  Petitioner has not shown an error of constitutional dimension with respect to any federal habeas claim.  Therefore, he cannot show that the cumulative effect of the alleged errors deprived him of fundamental fairness in the state criminal proceedings. *See Morris v. Sec 'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (refusing to decide whether post-AEDPA claims of cumulative error may ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law, but holding that petitioner's claim of

cumulative error was without merit because none of his individual claims of error or prejudice had any merit); *Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 565 (11th Cir. 2009) (noting absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel, but holding that the petitioner's cumulative error argument lacked merit because he did not establish prejudice or the collective effect of counsel's error on the trial); *Hill v. Sec'y, Fla. Dep't of Corr.*, 578 F. App'x 805 (11th Cir. 2014) (same).  Petitioner is not entitled to federal habeas relief.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.    <u>Certificate of Appealability</u>[11]

Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 228 U.S.C. § 2253(c)(1)  Rather, a district court must first issue a certificate of appealability ("COA").  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 228 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)(quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003).  Petitioner has not made the requisite showing.

---

[11] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *Id.*  As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**V.**      **Conclusion**

Based on the reasons set forth in this Order, Petitioner's 28 U.S.C. § 2254 petition is **DENIED with prejudice.**  Petitioner is denied a certificate of appealability.  The Clerk of Court is directed to terminate any pending motions, close the file, and enter judgment accordingly.

**DONE** and **ORDERED** in Ocala, Florida on July 5th 2016.

UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies to:  Kenyon Nolan
Counsel of Record